# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-388-1** |
| | : | |
| v. | : | |
| | : | |
| **KENNETH THOMPSON a/ka** | : | |
| **KR a/k/a Ken Rock** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                     **August 11, 2021**

Moving for a reduction of sentence under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), Kenneth Thompson, a prisoner at FCI Yazoo City Low, contends that his serious health conditions in light of the COVID-19 pandemic constitute extraordinary and compelling reasons warranting a reduction of his sentence.[1] Thompson claims that he is rehabilitated, citing his minimal disciplinary history and the numerous rehabilitation and education programs he has completed in prison, including obtaining his GED and earning various teaching and coaching certifications.[2] The government argues that the circumstances of the COVID-19 pandemic do not support a reduction in sentence because Thompson is fully vaccinated and his medical conditions are not substantiated by his records nor recognized by the CDC as factors associated with increased risk of severe illness or death from COVID-19.[3] It also argues he poses a danger to the community due to his history of non-compliance with supervised release following previous incarcerations.[4]

---

[1] Def.'s Em. Mot. for Comp. Release at 1-2 (ECF No. 244).

[2] *Id*. at 3-4; Def.'s Reply to Govt. Resp. at 2-4 (ECF No. 251).

[3] Govt. Resp. in Opp. to Def.'s Mot. to Red. Sent. at 4, 13-14 (ECF No. 247); Govt. Supp. Resp. in Opp. to Def.'s Mot. to Red. Sent. at 1-2 (ECF No. 252).

[4] Govt. Resp. at 14-15.

Thompson was convicted of four counts related to narcotics trafficking.[5] He had prior convictions for drug dealing, including several for dealing drugs while on probation.[6] His offense level was 38 and his criminal history category was III. The guidelines range was 235 to 293 months. He was sentenced to 240 months, the mandatory minimum.

Thompson is 39 years old.[7] He claims that he has a collapsed lung, his spleen was removed and he has chronic conditions that pre-dated his incarceration.[8] There is no mention of these conditions in Thompson's Bureau of Prisons ("BOP") medical records.[9]

Thompson is fully vaccinated against COVID-19. He received the first dose of the Pfizer vaccine on January 14, 2021, and the second dose on February 2, 2021.[10]

Because Thompson is fully vaccinated against COVID-19, we find that the circumstances of the COVID-19 pandemic together with his health conditions do not constitute an extraordinary and compelling reason warranting release. Therefore, we shall deny his motion for a sentence reduction under the compassionate release statute.

## Discussion

A court may reduce a defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a), if it first finds that extraordinary and compelling reasons warrant a reduction and "a reduction is consistent with applicable policy statements issued by the

---

[5] *Id*. at 2.

[6] *Id*. at 3.

[7] *See* Bureau of Prisons Health Services Records (ECF No. 245).

[8] Def.'s Em. App. at 2; Def.'s Reply at 6.

[9] *See* Health Services Records.

[10] Govt. Supp. Resp. at 1.

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Before ordering the release of a prisoner, the court must determine that he is not a danger to the safety of others or the community. 18 U.S.C. § 3142(g).

Congress did not define what constitutes an extraordinary and compelling reason, leaving it to the Sentencing Commission to do so. In its policy statement and commentary addressing Section 3582(c)(1)(A), the Sentencing Commission set forth three specific extraordinary and compelling reasons. U.S.S.G. § 1B1.13, cmt. n. 1. Application Notes 1(A) through 1(C) detail qualifying medical, age and family circumstances.

Making it clear that these were not the only reasons that may be considered extraordinary and compelling, the Sentencing Commission added an "other reasons" category that provides that a reduction may be warranted by an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, cmt. n. 1(D). At the same time, it delegated the BOP Director to define what "other reasons" qualify under subdivision 1(D). *Id*.

We have held in other cases that a court has the authority and responsibility to determine what is an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).[11] We have also determined that the COVID-19 virus and its impact on the prison population in a particular case may warrant relief under Section 3582(c)(1)(A).[12] Thus, we consider Thompson's motion on the merits.

---

[11] *See U.S. v. Babbitt*, 496 F. Supp. 3d 903 (E.D. Pa. 2020); *U.S. v. Spencer*, No. 15-562, 2021 WL 565388 (E.D. Pa. Feb. 12, 2021); *U.S. v. Randall*, No. 08-8, 2021 WL 922077 (E.D. Pa. Mar. 11, 2021); *U.S. v. Avery*, No. 04-243, 2021 WL 949482 (E.D. Pa. Mar. 12, 2021); *U.S. v. Medina*, No. 15-554 (E.D. Pa. Apr. 22, 2021).

[12] *See Babbitt*, 496 F. Supp. 3d; *Spencer*, 2021 WL 565388; *Medina*, No. 15-554.

To determine whether extraordinary and compelling reasons exist in an individual case, we consider the circumstances of the COVID-19 pandemic, the defendant's health conditions, the defendant's age, the risk of contracting COVID-19 at the defendant's facility and whether the defendant has been vaccinated. None of these reasons alone is an extraordinary or compelling reason. Health complications without the risk of COVID-19 at a particular institution do not warrant release in every case. Similarly, the fact that a facility may have confirmed cases of COVID-19 does not justify release if the defendant is not at risk due to age or other medical conditions, or if the defendant is fully vaccinated. However, a combination of these circumstances may rise to the level of "extraordinary and compelling." Hence, each case must be determined by the facts unique to the defendant.

There are three vaccines against COVID-19, produced by Pfizer-BioNTech, Moderna and Johnson & Johnson, approved for emergency use in the United States.[13] Clinical trials of the Pfizer vaccine reported that it was up to 95% effective at preventing symptomatic COVID-19 across a number of variables, including age, gender, race, ethnicity, body mass index and other medical conditions.[14] In clinical trials, the vaccine was 100% effective in preventing severe disease.[15] Clinical trials for Moderna showed an efficacy rate of 94.1% against preventing symptomatic infection, although the rate dropped to 86.4% for people aged 65 and older.[16]

---

[13] "COVID-19 Vaccines," U.S. Food & Drug Administration, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/covid-19-vaccines.

[14] Katella, Kathy, "Comparing the COVID-19 Vaccines: How Are They Different?" Yale Medicine (July 22, 2021), https://www.yalemedicine.org/news/covid-19-vaccine-comparison.

[15] *Id*.

[16] *Id*.

4

Both Pfizer and Moderna require two separate doses, several weeks apart, to be fully effective.[17] The Johnson & Johnson vaccine only requires one dose and has been shown to have an 86% efficacy against severe illness and a 72% efficacy overall.[18] Serious side effects such as heart inflammation and blood clots have been reported in rare cases.[19]

As of August 9, 2021, more than 4 billion vaccine doses have been administered worldwide.[20] Based on the current available data, the vaccines appear to be effective against the COVID-19 variants detected in different regions around the world.[21] A study by the National Institute of Health on the impact of the two-dose vaccines concluded that "[v]accination markedly reduced adverse outcomes," with hospitalizations decreasing by 63.5%, intensive care unit hospitalizations decreasing by 65.6% and deaths decreasing by 69.3%.[22]

---

[17] *Id*.

[18] *Id*.

[19] *Id*.

[20] "WHO Coronavirus Disease (COVID-19) Dashboard," World Health Organization, https://covid19.who.int/ (updated daily).

[21] Katella, *supra* note 14; "About Variants of the Virus that Causes COVID-19," Centers for Disease Control and Prevention (June 28, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html.

[22] Moghadas, Seyed M. et al., "The impact of vaccination on COVID-19 outbreaks in the United States," Clin. Infect. Dis. (Jan. 30, 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7929033/.

Since the vaccines have become available, the BOP has administered over 208,000 doses to incarcerated individuals and staff.[23] As of May 2021, over half of the prisoners incarcerated in the federal and state systems are vaccinated.[24]

Thompson is fully vaccinated against COVID-19, having received both doses of the Pfizer vaccine. Although he claims to suffer from serious medical conditions, there is no documented history of them. Even assuming he has them, his vaccination status provides sufficient protection against any risks. Moreover, Thompson is housed at FCI Yazoo City Low, which has reported only four cases among inmates and none among staff.[25] Of the inmates at the Yazoo City complex, 85% are fully vaccinated.[26] The risks posed to Thompson's health are minimal. Therefore, these circumstances do not present an extraordinary or compelling reason justifying compassionate release.[27]

---

[23] Federal Bureau of Prisons, "COVID-19 Coronavirus" (updated daily), https://bit.ly/2SOsQpe.

[24] Herring, Tiana and Emily Widra, "Just over half of incarcerated people are vaccinated, despite being locked in COVID-19 epicenters," Prison Policy Initiative (May 18, 2021), https://www.prisonpolicy.org/blog/2021/05/18/vaccinationrates/.

[25] "COVID-19 Coronavirus," *supra* note 23.

[26] *Id*.; Federal Bureau of Prisons, "FCI Yazoo City Low," https://www.bop.gov/locations/institutions/yaz/; Federal Bureau of Prisons, "USP Yazoo City," https://www.bop.gov/locations/institutions/yap/.

[27] Our reasoning is consistent with that of numerous other courts in the Third Circuit that have denied compassionate release motions brought by vaccinated defendants. *See, e.g., United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit."); *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021) ("Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release.") (citing cases); *United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021) ("The risk posed to an inoculated Mr. Roper is not an extraordinary and compelling reason for his release."); *United States v. Jones*, 2021 WL 1561959, at *1 (E.D. Pa. Apr. 21, 2021) ("[A]s of now, the available data confirms the extreme effectiveness of the vaccines."); *United States v. Peterson*, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) ("Given the significant protection the [Johnson and Johnson] vaccine offers and the declining rates of COVID-19 infections in prisons, we (like many other courts) do not find that Mr. Peterson has presented extraordinary and compelling circumstances at this time."); *United States v. Kamara*, 2021 WL 2137589 (E.D. Pa. May 26, 2021).

**Conclusion**

The COVID-19 pandemic and the low risk of Thompson contracting COVID-19 at FCI Yazoo City Low do not constitute extraordinary and compelling reasons to grant a sentence reduction in light of his vaccination status. He is no longer at risk of severe illness or death while continuing to serve his sentence at FCI Yazoo City Low. Therefore, we shall deny Thompson's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

---

Because we conclude that there is no extraordinary or compelling reason to grant compassionate release, we do not reach the issue of whether Thompson is a danger to the safety of others or the community.